**In re AMERICAN REMANUFACTURERS, INC., et al., Debtors.**

Montague S. Claybrook, as Chapter 7 Trustee of the estates of American Remanufacturers, Inc., et al., Plaintiff,

v.

AutoZone Texas, L.P., AutoZone, Inc., General Partner to AutoZone Texas, L.P., and AutoZone Parts, Inc., Defendants.

Bankruptcy No. 05–20022 (PJW).

Adversary Nos. 07–51597 (PJW), 07–51603 (PJW).

United States Bankruptcy Court, D. Delaware.

Dec. 8, 2010.

Michael R. Lastowski, Sommer L. Ross, Duane Morris LLP, Wilmington, DE, Stephan W. Ragland, Kristen C. Wright, Bass, Berry & Sims PLC, Memphis, TN, for Defendants.

L. Jason Cornell, Fox Rothschild LLP, Wilmington, DE, Alan L. Frank, Alan L. Frank Law Associates P.C., Elkins Park, PA, Michael G. Menkowitz, Fox Rothschild LLP, Philadelphia, PA, for Montague S. Claybrook, Chapter 7 Trustee for the estates of American Remanufacturers, Inc., et al.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to the motion of AutoZone Parts, Inc., AutoZone Texas, L.P., and AutoZone, Inc. (collectively the "Defendants" or "AutoZone") to dismiss the amended complaint of Montague S. Claybrook, the chapter 7 trustee (the "Trustee") of the jointly-administered estates of American Remanufacturers, Inc. ("ARI"), Automotive Caliper Exchange, Inc. ("ACEI"), Car Component Technologies ("CCT"), and ATSCO Products, Inc. ("ATSCO") (collectively, the "Debtors"). The Trustee's amended complaint seeks over $4 million in damages on theories of breach of contract, *quantum meruit*, and turnover of estate property, all based on vendor agreements between the Defendants and ACEI, CCT, and ATSCO. The Defendants moved to dismiss the amended complaint, arguing that (i) the Trustee lacks standing to bring these actions because the ACEI, CCT, and ATSCO estates have been closed and (ii) that the allegations of unjust enrichment, *quantum meruit*, and turnover of estate property fail to state claims upon which relief may be granted. For the reasons discussed below, I will deny the motion.

## Background

ARI and nine affiliates, including, ACEI, CCT, and ATSCO, filed separate petitions for bankruptcy relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, on November 7, 2005. These petitions were administratively consolidated, with the ARI proceeding serving as the lead case.

On November 17, 2005, these cases were converted to cases under Chapter 7 of the Bankruptcy Code. Montague S. Claybrook was appointed trustee of these estates on the next day. On February 24, 2006, the Trustee filed the Debtor's Statement of Financial Affairs and Schedules, using information prepared by the Debtors' chief restructuring officer. This information listed the Debtors' assets and liabilities on a consolidated basis, instead of listing the assets and liabilities of each Debtor separately.

On June 29, 2007, the Trustee commenced an adversary proceeding against the Defendants to collect receivables allegedly due under vendor agreements with ACEI, CCT, and ATSCO (the "Accounts Receivable Action"). The complaint contained three counts, one on behalf of each of ACEI, CCT, and ATSCO, seeking damages in the aggregate amount of $5,597,951.56.

While discovery was underway in the Accounts Receivable Action, on July 8, 2008, the Trustee filed certifications that these three affiliates had no assets, and he moved to have their bankruptcy cases closed. The Court, on August 20, 2008, closed the cases and discharged the Trustee.

After these cases were closed, discovery in the Accounts Receivable Action continued. The Trustee deposed three Auto-Zone designees, and the Defendants prepared an expert report. Based on these testimonies, on October 14, 2010, the Trustee moved to amend the complaint to adjust the damages down to $4,557,476. Otherwise, the amended complaint did not make any substantive changes. In both the original complaint and the amended complaint there are three separate accounts receivable amounts with each one tied separately to the appropriate Debtor.

The Defendants moved to dismiss the amended complaint on November 1, 2010, for the reasons listed above. In opposition to the motion, the Trustee contends that the relevant point in time for determining standing and jurisdiction was when the Accounts Receivable Action was commenced. The Trustee further contends that he has stated a proper claim for unjust enrichment, *quantum meruit,* and for turnover of estate property.

## Discussion

The primary question presented in the motion to dismiss is whether the Trustee may pursue the Accounts Receivable Action after closing the ACEI, CCT, and ATSCO estates. The Accounts Receivable Action was property of the ACEI, CCT, and ATSCO estates under Section 541, 11 U.S.C. § 541. Property of the estate may be abandoned in three ways, as set forth in Section 554:

(a) After notice and a hearing, the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(b) On request of a party in interest and after notice and a hearing, the court may order the trustee to abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate.

(c) Unless the court orders otherwise, any property scheduled under section 521(1) of this title not otherwise administered at the time of the closing of a case

is abandoned to the debtor and administered for purposes of section 350 of this title.

11 U.S.C. § 554.

Here, neither the Trustee nor any party in interest moved to abandon the Accounts Receivable Action under subsections (a) or (b). Instead, the Trustee, by closing the ACEI, CCT, and ATSCO estates technically abandoned the Accounts Receivable Action under subsection (c).

■ Generally, abandonment of estate property is irrevocable. *Figlio v. American Mgmt. Servs., Inc. (In re Figlio)*, 193 B.R. 420, 423 (Bankr.D.N.J.1996); *In re Ozer*, 208 B.R. 630, 633 (Bankr. E.D.N.Y.1997). Nonetheless, as articulated by the Court of Appeals for the Tenth Circuit, this rule carries less force when property has been technically abandoned under § 554(c):

> Unlike an abandonment under § 554(a)(b), which by very definition must be intentional and unequivocal and to which the general rule of irrevocability applies rather strictly, ... a technical abandonment may occur inadvertently as an automatic consequence of premature case closing. Thus, abandonment under § 554(c) "is merely a rebuttable presumption. If a party in interest objects and the considerations that would have justified abandonment prior to the closing of the case do not exist, the court has discretion to reopen the case and order further administration."

*Woods v. Kenan (In re Woods)*, 173 F.3d 770, 778 (10th Cir.1999) (quoting William L. Norton, Jr., *Norton Bankruptcy Law and Practice* § 53:3 (2d ed. 1995 & supp. 1998)).

■■ A case may be reopened under § 350(b) "to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). Even though Bankruptcy Rule 5010 states that a "debtor or other party in interest" may move to reopen a case, there is authority that a court may also reopen a case *sua sponte*. *See e.g., Leach v. Buckingham (In re Leach)*, 194 B.R. 812, 815 (E.D.Mich.1996); *In re Searles*, 70 B.R. 266, 271 (D.R.I.1987). In addition, a court may also reopen a case to allow for the administration of an asset by granting relief from its final closing order under Federal Rule of Civil Procedure 60, incorporated by Bankruptcy Rule 9024. Rule 60 allows courts to grant relief from a final order for, among other reasons, "mistake, inadvertence, surprise, or excusable neglect" and "any other reason that justifies relief."

■ Courts have broad discretion to reopen a case. *Helms v. Arboleda (In re Arboleda)*, 224 B.R. 640, 644 (Bankr. N.D.Ill.1998). Reopening a case is not mandatory, however, and laches may justify the refusal to reopen. *Id.* Before reopening a case to allow an adversary proceeding to continue, a court should balance "the certainty afforded parties by finality against the benefits of full and proper administration of all assets." *In re Figlio*, 193 B.R. at 425.

In *Arboleda*, a trustee filed a report of no assets and the case was closed. After closing, the trustee commenced an adversary proceeding to recover an allegedly fraudulent transfer. In order to pursue the action, the trustee moved to reopen the bankruptcy case. The court denied the motion because (i) there was no showing that the case had been closed due to inadvertence or that refusal to reopen would be unjust to any creditors and (ii) that the doctrine of laches applied, as nearly a year had lapsed between the closing of the case and the commencement of the adversary proceeding. 224 B.R. at 645–46.

Here, in contrast, the equities weigh heavily in favor of reopening the case. First, the refusal to reopen would be unjust to the creditors, as the Accounts Receivable Action is potentially a significant asset to the three estates. Second, the Trustee purposely closed the bankruptcy cases, but he did not intend thereby to abandon the Accounts Receivable Action. In closing the cases, he apparently (and mistakenly) believed that he could administer the assets of ACEI, CCT, and ATSCO via the lead ARI bankruptcy case. His continued pursuit of the Accounts Receivable Action demonstrates that he did not intend to abandon this adversary proceeding. Likewise, the Defendants' continued participation in discovery after the cases were closed demonstrates that they did not believe the Trustee had abandoned the Accounts Receivable Action. Unlike in *Arboleda,* the Accounts Receivable Action was commenced prior to closing the ACEI, CCT, and ATSCO cases. The Trustee filed the original complaint more than a year before the cases were closed.

Under Rule 15(c)(1)(B) an amendment relates back to the date of the original complaint if "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Clearly, the amended complaint asserts a claim that arose out of the same conduct, transactions, or occurrences set forth in the original complaint.

Accordingly, this Court will *sua sponte* reopen the bankruptcy cases of ACEI, CCT, and ATSCO to permit the Trustee to continue pursuit of the Accounts Receivable Action.[1]

**Conclusion**

For the reasons discussed above, I will order that the bankruptcy cases for ACEI, CCT, and ATSCO be reopened and I will deny the Defendants' motion to dismiss. Furthermore, the three orders that closed the cases will be vacated.

**ORDER**

For the reasons set forth in the Court's memorandum opinion of this date, the Defendants' motion to dismiss is denied and the orders that closed the Chapter 7 cases of Automotive Caliper Exchange Incorporated (Case No. 05–20026, D.I. 8), Car Component Technologies, Inc. (Case No. 05–20027, D.I. 8) and ATSCO Products, Inc. (Case No. 05–20025, D.I. 8) are hereby vacated.

---

1. The Court will also deny the Defendants' motion to dismiss as to the "turnover claims," "*quantum meruit* claims," and "unjust enrichment claims," as all of these are the same with respect to the amounts of accounts receivable. As such, these additional counts will not likely result in any additional evidence being presented at trial, and so this Court will refrain from ruling on these counts until the conclusion of trial.